# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JS - 6

## CIVIL MINUTES - GENERAL

Case No. SACV 10-0528-DOC(RNBx)            Date: 09/21/2010

Title: Steadfast Insurance Co. v. Certain Underwriters at Lloyd's London

---

DOCKET ENTRY
      [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                   Date:_____ Deputy Clerk: _____

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Kathy Peterson | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                  NONE PRESENT

---

PROCEEDING (IN CHAMBERS): REMANDING CASE TO ORANGE COUNTY SUPERIOR COURT

      Before the Court is Defendant, Certain Underwriters at Lloyd's of London's ("Defendant"), Response to the Court's Order to Show Cause, issued August 13, 2010, ordering Defendant to show cause why the above-captioned case should not be remanded to state court for failure to establish federal subject-matter jurisdiction (Docket 17). The Court is also in receipt of Plaintiff's Reply to Defendant's Response (Docket 18). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. The Court hereby REMANDS the case to the Orange County Superior Court.

## I.     BACKGROUND

      Steadfast Insurance Company ("Plaintiff") brought suit in Orange County Superior Court against Certain Underwriters at Lloyd's of London ("Defendant") seeking equitable contribution, subrogation and indemnity. Plaintiff and Defendant were both insurers of W L Homes, LLC ("Insured"). Insured suffered damages in the amount of $1,740,128.69 resulting from faulty

construction of the project for which Plaintiff and Defendant were insurers. Insured sought to recover under both policies, but only recovered from Plaintiff, who paid the full amount of damages sustained. Plaintiff alleges that Defendant was liable for $25,000-worth of mold-related damages under the sub-limit in Insured's policy with Defendant, and that Defendant is also liable for a portion of non-mold damage.[1] Accordingly, Plaintiff seeks to recover those portions of the payment it made to Insured for which Defendant was liable under the policy it executed in favor of Insured.

Defendant removed this action to federal court on May 4, 2010, citing the existence of diversity jurisdiction under 28 U.S.C. § 1332(a). Defendant is a group of insurance Syndicates operating together in the Lloyd's of London marketplace. In its Notice of Removal, Defendant disclosed only the citizenship of the "managing agent" of what Defendant classified as its "lead syndicate." Citing the prevailing view that Lloyd's syndicates constitute unincorporated associations whose citizenship is only established with reference to the citizenship of each of the association's members, the Court issued an Order to Show Cause ("OSC") why this case should not be remanded to state court for failure to establish federal subject-matter jurisdiction (Docket 16). Specifically, the Court requested the names and citizenship of each member-underwriter of the Defendant Syndicates. Defendant's response to the OSC did not supply the requested information, choosing instead to dispute the legal standard by which the Syndicates' citizenship should be established.

## II.     LEGAL STANDARD

Remand may be ordered for lack of subject matter jurisdiction or any defect in the removal procedure. 28 U.S.C. § 1447(c). Removal of state actions is allowed only if the plaintiff could have originally filed the action in federal court. *See* 28 U.S.C. § 1441. "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.), Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999); *see Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). If there is any doubt as to the right of removal, remand must be ordered. *See Gaus*, 980 F.2d at 566.

If based on diversity of citizenship, the notice of removal must allege the citizenship of all parties and the amount in controversy if not pled in the state court complaint. 32A Am. Jur. 2d Federal Courts § 1433. *See also* 28 U.S.C. § 1332 (stating that federal courts may exercise original jurisdiction over claims where there is complete diversity of citizenship among the parties and where the amount in controversy exceeds $75,000); 28 U.S.C. § 1441 (establishing that removal is proper in any case where the federal courts may exercise original jurisdiction). When determining the citizenship of an

---

[1] The precise amount sought for non-mold damage is unclear, but Defendant asserts that "plaintiff . . . is seeking at least a 50% share of the alleged $1.7 million loss, or at least $850,000." Defendant's Response to Order to Show Cause at 4; *see also* Response to Declarations of William Reilly and Ashley Lawrence Re Order to Show Cause at 2.

unincorporated association, the Court must look to the citizenship of each of the association's members. *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195 (1990). While the Ninth Circuit has not ruled on whether this rule specifically applies to syndicates in the Lloyd's market, persuasive authority suggests that it does. *See Indiana Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314 (7th Cir. 1998); *see also Underwriters at Lloyd's London v. Osting-Schwinn*, — F.3d —, 2010 WL 3056606, at *7 (11th Cir. 2010); *E.R. Squibb & Son, Inc. v. Accident & Cas. Ins. Co.,* 160 F.3d 925 (2d Cir. 1998). *But see Certain Interested Underwriters at Lloyd's v. Layne*, 26 F.3d 39 (6th Cir. 1994).

## III. DISCUSSION

In *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195 (1990), the Supreme Court held that the citizenship of an unincorporated association is determined by the citizenship of all of its members. In reaching this conclusion, the Court rejected two arguments that bear on the question of how to classify Lloyd's Syndicates. First, in rebuffing the notion that only the citizenship of general partners was relevant to the citizenship of an unincorporated association, the Court rejected a control-based test for determining the citizenship of non-corporate entities. *Id.* at 192  Second, the Court rejected the argument that unincorporated associations should be treated, for the purposes of diversity jurisdiction, like trustees. In *Navarro Savings Assn. v. Lee*, 446 U.S. 458 (1980), the Court had held that "trustees [can] 'sue in their own right, without regard to the citizenship of the trust beneficiaries.'" *Id.* at 465-66. Thus, a trust was deemed a citizen of only those jurisdictions where the trustee, the party in control of the trust, was a citizen. In *Carden*, the Court was invited to extend this analysis to the context of unincorporated associations. The Court explicitly declined to do so. *Carden*, 494 U.S. at 191-92 (stating that the "argument [in favor of this approach] is, to put it mildly, less than compelling").

Ultimately, the Court concluded that unincorporated business associations, without regard to control or business reality, have the citizenship of each and every one of its member for the purposes of diversity jurisdiction. *Id.* at 195-96 ("In sum, we reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members. We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members,' 'the several persons composing such association,' 'each of its members.'")(internal citations omitted).

Against this backdrop the Seventh Circuit considered the unique situation of Lloyd's Syndicates in *Indiana Gas Co., Inc. v. Home Insurance Co.*, 141 F.3d 314 (7th Cir. 1998). The Seventh Circuit relied on the Supreme Court's opinion in *Carden* in concluding that "*every* association . . . other than a corporation is to be treated like a partnership." *Id.* at 317 (emphasis original). Accordingly, "underwriting syndicates must be treated like partnerships when determining their citizenships." *Id.* at 319.  In other words, the Seventh Circuit held that the citizenship of Lloyd's Syndicates depends on the citizenship of each member-underwriter of the Syndicate. *Indiana Gas*, 141 F.3d at 319 ("We . . . hold that the underwriting syndicates must be treated like partnerships when determining their citizenship."). A majority of circuits to address the issue post-*Indiana Gas* have agreed with the Seventh Circuit's

decision. *See Underwriters at Lloyd's London v. Osting-Schwinn*, — F.3d —, 2010 WL 3056606, at *7 (11th Cir. 2010) (quoting *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 858) (5th Cir. 2003)); *E.R. Squibb & Son, Inc. v. Accident & Cas. Ins. Co.,* 160 F.3d 925 (2d Cir. 1998).

Defendant, in responding to the Court's OSC, misconstrued the Seventh Circuit's decision in *Indiana Gas*. Defendant quoted the Seventh Circuit as stating that "no view of the situation makes the [member-underwriters] parties in their own right." Def. Resp. at 5 (citing *Indiana Gas*, 141 F.3d at 317). Defendant then concluded from this quote that the citizenship of the member-underwriters was not relevant when determining complete diversity. *Id.* ("Thus, as a corporate entity organized under the laws of the United Kingdom, the Managing Agent's citizenship is the deciding factor and diversity exists."). This contention, however, betrays a misguided understanding of the Seventh Circuit's position. The quote on which Defendant relied (on two separate occasions) was taken from the following paragraph:

> All parties other than Indiana Gas and the London Market Insurers have passed on the opportunity to discuss the jurisdictional consequences of the names' citizenship, although the issue imperils the judgment with respect to every party. ... For its part, Indiana Gas has volunteered to dismiss any names who were citizens of Indiana when the complaint was filed. This offer is pointless, for the names are not parties in their own right. It may be that the active underwriters or syndicates have multiple citizenships, but this does not imply that there are multiple parties. *See Carden*, 494 U.S. at 190 n. 2. Indiana Gas can no more dismiss individual names than it could sue a partnership and "dismiss" any partners who are citizens of Indiana. A syndicate is in or out as a unit. Indiana Gas had a chance under *Newman-Green* to dismiss the London underwriting syndicates, so that it could proceed against the other insurers. It elected not to do so. As a result, *we must decide whether citizenship of the underwriters is the citizenship of every name, or only of the active underwriter who acts as the managing agent*. *Indiana Gas*, 141 F.3d at 316-17 (emphasis added).

As explained above, the Seventh Circuit went on to hold that the citizenship of Lloyd's Syndicates depends on the citizenship of each member-underwriter (or "name") of the Syndicate. *Indiana Gas*, 141 F.3d at 319. The Second and Eleventh Circuits agreed. *See Underwriters at Lloyd's London v. Osting-Schwinn*, — F.3d —, 2010 WL 3056606, at *7 (11th Cir. 2010) (quoting *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 858) (5th Cir. 2003)); *E.R. Squibb & Son, Inc. v. Accident & Cas. Ins. Co.,* 160 F.3d 925 (2d Cir. 1998).

In the face of this majority position, Defendant relies on the minority view espoused by the Sixth Circuit in *Certain Underwriters at Lloyd's London v. Layne*, 26 F.3d 39, (6th Cir. 1994). In *Layne*, the Sixth Circuit found Syndicates diverse based solely on the citizenship of the managing

agent. *Layne*, 26 F.3d at 43. The Court notes, however, that *Layne* predated *Indiana Gas*, *E.R. Squibb & Son* and *Osting-Schwinn*. The Court finds the Seventh, Second and Eleventh Circuit's rejection of *Layne* in those cases persuasive.

Defendant also seeks support for its position in certain cases decided by the Third and Fifth Circuits. Defendant, however, fails to note the significant procedural differences between the cited cases and the one at bar. In *Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety Co.*, 177 F.3d 210 (3rd Cir. 1999), the first case cited by Defendant, the Third Circuit found diversity based solely on the lead underwriter's citizenship. *Id.* at 223. This precedent is easily distinguished from the present case, however, as the parties stipulated to substituting the individual lead underwriter in place of "Certain Underwriters at Lloyd's London." *Id.* The defendant in that case thus was not Certain Underwriters at Lloyd's London, but rather "named insurance companies" who were not acting as representatives for all underwriters. *Id.*

The Fifth Circuit's decision in *Corfield v. Dallas Glen Hills, LP*, 355 F.3d 853 (5th Cir. 2003), is similarly distinguishable. In *Corfield*, Liberty Corporate Capital, Ltd. ("Liberty"), was the sole named plaintiff in a declaratory judgment action brought to determine the rights and obligations of parties to an insurance contract. *Corfield*, 355 F.3d at 855. Liberty sued as a named member-underwriter of one of the syndicates underwriting the policy. Liberty did not sue on behalf of the other syndicates or underwriters, and only sought a declaration as to its own rights and obligations under the policy. *Id.* Thus, *Corfield*, like *Chemical Leaman*, was a suit involving a named party individually, not a representative of other underwriters. *Corfield*, 355 F.3d at 856-57.

The Court remains persuaded by the reasoning of *Indiana Gas* and its progeny. Accordingly, the Court finds that complete diversity can only exist if all member-underwriters are citizens of different states than all plaintiffs. Defendant has failed to properly plead the citizenship of all member-underwriters and, as a result, has failed to meet its burden of establishing federal subject matter jurisdiction.[2]

## IV. DISPOSITION

This case is hereby REMANDED to the Orange County Superior Court.

---

[2] The Court need not reach the issue of whether the second requirement of federal diversity jurisdiction – an amount in controversy exceeding $75,000 – is met. Defendant's failure to establish complete diversity of citizenship is sufficient to necessitate remand.